# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GWEN I. GERLOFS, | ) | |
| | ) | |
| Petitioner/ | ) | C.A. No. N23C-09-178 MAA CCLD |
| Counterclaim Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITIZENS BANK, N.A., | ) | |
| | ) | |
| Respondent/ | ) | |
| Counterclaim Petitioner. | ) | |
| | ) | |
| ADAPTHEALTH LLC, | ) | |
| | ) | |
| Cross-Claim Respondent/ | ) | |
| Counterclaim Petitioner. | ) | |

Submitted: March 7, 2024
Decided: April 29, 2024

*Citizens Bank, N.A.'s Application for Fees and Costs:*
**GRANTED, in part.**

## <u>MEMORANDUM OPINION</u>

Christopher P. Simon, Esquire (Argued) and Kevin S. Mann, Esquire, of CROSS & SIMON, LLC, Wilmington, Delaware, *Attorneys for Gwen I. Gerlofs*.

Ronald N. Brown, III, Esquire and Daniel P. Klusman, Esquire, (Argued), of DLA PIPER LLP, Wilmington, Delaware, *Attorneys for Citizens Bank, N.A.*

Steven L. Caponi, Esquire, Matthew B. Goeller, Esquire and Megan E. O'Connor, Esquire, (Argued), of K&L GATES LLP, Wilmington, Delaware, and Thomas R. DeCesar, Esquire, of K&L GATES LLP, Harrisburg, Pennsylvania, *Attorneys for AdaptHealth, LLC*.

**Adams, J.**

## INTRODUCTION

Plaintiff Gwen I. Gerlofs ("Gerlofs") initiated this action to secure the release of $4 million from an escrow account (the "Escrow Funds") maintained by Citizens Bank, N.A. ("Citizens"). AdaptHealth LLC ("AdaptHealth"), the buyer in a September 2021 sale in which Gerlofs was the seller, had deposited the Escrow Funds in connection with that sale. An agreement between Gerlofs, AdaptHealth, and Citizens governs the Escrow Funds (the "Escrow Agreement"). When it came time to release the Escrow Funds to Gerlofs, AdaptHealth made a last-minute objection to stop the transfer. On November 3, 2023, the Court granted summary judgment in favor of Gerlofs, holding that the plain language of the Escrow Agreement supported disbursement of the Escrow Funds.

Though that holding resolved the primary dispute in this litigation, Citizens now seeks indemnification of its costs pursuant to the Escrow Agreement. AdaptHealth accepts that Citizens is contractually entitled to its full costs, but Gerlofs disputes Citizens' application. AdaptHealth and Gerlofs also disagree over which of them is primarily responsible for Citizens' costs. This is the Court's opinion on those issues.

For the reasons stated herein, Citizens' application for fees and costs is GRANTED as modified. Gerlofs and AdaptHealth shall each pay one-half of the

awarded fees and costs Citizens incurred before April 28, 2023. Gerlofs shall pay all of the awarded fees and costs Citizens incurred on or after April 28, 2023.

## FACTS AND PROCEDURAL HISTORY

### I.    The Escrow Agreement

Gerlofs, AdaptHealth, and Citizens entered the Escrow Agreement on November 3, 2021.[1] The Escrow Agreement was part of the transaction in which Gerlofs sold Pumps It, Inc. ("Pumps It") to AdaptHealth.[2] The Escrow Agreement called upon Citizens to be the "Escrow Agent," with Gerlofs and AdaptHealth as the "Escrow Parties."[3] Subject to its full terms, the core of the Escrow Agreement was that AdaptHealth had one year to make claims against the Escrow Funds and then Citizens would release any undisputed funds to Gerlofs within three business days of November 2, 2022 (the "Termination Date").

Citizens' obligations as Escrow Agent were limited, and Citizens did not agree to become a *de facto* arbitrator for Gerlofs and AdaptHealth. For example, Section 6(a) of the Escrow Agreement provides:

> Notwithstanding anything to the contrary in this Agreement, the Escrow Agent *shall only* disburse Escrow Funds from the Escrow Account pursuant to (i) joint written instructions from both of the

---

[1] D.I. No. 1 ("Compl."), Ex. A ("Escrow Agreement").
[2] *Id.*
[3] *Id.*

Escrow Parties . . . or (ii) a final, non-appealable judgment, order or decree of a court of competent jurisdiction or arbitration award . . . .[4]

Section 8(e) of the Escrow Agreement adds:

In the event that the Escrow Agent shall be uncertain as to its duties or rights under this Agreement, or shall receive any certificate, statement, notice, instruction, direction or other instrument from any other party with respect to the Escrow Funds which, in the Escrow Agent's reasonable and good faith opinion, is in conflict with any of the provisions of this Agreement, or shall be advised that a dispute has arisen with respect to the Escrow Funds or any part thereof, the Escrow Agent shall be entitled, without liability to any person, to refrain from taking any action other than to keep safely the Escrow Funds until the Escrow Agent shall be directed otherwise in accordance with Joint Instructions or an order of a court with jurisdiction over the Escrow Agent. The Escrow Agent shall be under no duty to institute or defend any legal proceeding, but may, in its discretion and at the expense of the Escrow Parties as provided in subjection (f) immediately below, institute or defend such proceedings.

Section 8(f), in turn, provides:

The Escrow Parties authorize the Escrow Agent, if the Escrow Agent is threatened with litigation or is sued, to interplead all interested parties in any court of competent jurisdiction and to deposit any particular Escrow Funds with the clerk of that court. In the event of any dispute under this Agreement, the Escrow Agent shall be entitled to petition a court of competent jurisdiction and shall perform any acts ordered by such court.

Along with those limits on Citizens' obligations came limits on Citizens' liability. The Escrow Agreement is laden with explicit limitations on the risk

---

[4] *Id.* § 6(a) (emphasis added).

Citizens agreed to bear in its role as Escrow Agent.[5]  Most pertinent to this dispute,

Section 9 of the Escrow Agreement provides:

> The Escrow Parties agree jointly and severally to indemnify the Escrow Agent for, and to hold it harmless against, any and all claims, suits, actions, proceedings, judgments, deficiencies, damages, settlements, liabilities and expenses (including reasonable legal fees and expenses of attorneys chosen by the Escrow Agent) as and when incurred, arising out of or based upon any act, omission, alleged act or alleged omission by the Escrow Agent or any other cause, in any case in connection with the acceptance of, or performance or non-performance by the Escrow Agent of, any of the Escrow Agent's duties under this Agreement, except as a result of the Escrow Agent's bad faith, willful misconduct or gross negligence. As between the Escrow Parties, each of them shall bear the foregoing in proportion to their respective responsibility, if any, with respect to the foregoing, or, if neither of them bears greater responsibility than the other, each Escrow Party shall bear one-half of the foregoing.[6]

The Escrow Agreement also contained a collection of provisions to resolve

any claims made by AdaptHealth.  For purposes of this fee application, the critical

point is that AdaptHealth was required to make claims against the Escrow Funds, if

at all, "on or before November 2, 2022 (the 'Termination Date')."[7]  The Escrow

Agreement stated, "[t]he Escrow Agent shall disregard any Claims that are not

submitted by notice given on or before the Termination Date."[8]

---

[5] *See, e.g., id.* §§ 3, 6(a), 7, 8(a)–(e), 9, 16, 19(g).
[6] *Id.* § 9.
[7] *Id.* § 6(b).
[8] *Id.*

5

## II.   The Escrow Dispute

On November 3, 2022, Citizens emailed AdaptHealth and Gerlofs, advising them that the Termination Date had passed and "Citizens Bank has not received, nor is aware of, any outstanding or pending claims."[9]  In that email, Citizens asked the parties to "please let [Citizens] know" if there were any unresolved claims.[10]  That same day, AdaptHealth responded, "[p]lease be advised there are a number of claims being resolved by the parties and the escrow should not be released until the parties are in agreement on the open claims."[11]

The purported claims AdaptHealth referenced in its November 3, 2022 email were disputes between AdaptHealth and Gerlofs regarding certain pre-closing liabilities of Pumps It, as well as an insurer's contemplated attempt to recoup overpayments it made to Pumps It.[12]  Despite those issues, AdaptHealth did not timely submit a claim against the Escrow Funds in accordance with the Escrow Agreement.[13]  Nevertheless, Citizens refused to disburse the Escrow Funds without AdaptHealth's consent pursuant to the Escrow Agreement.[14]  Litigation thus ensued.

---

[9]  Compl., Ex. B.
[10]  *Id.*
[11]  Chancery Dkt. No. 32 ("Pl.'s Mot for Summ. J."), Ex. D.
[12]  *See* Chancery Dkt. No. 39 ("AdaptHealth's Opp'n to Pl.'s Mot. for Summ. J."), Ex. D.
[13]  *See* Pl.'s Mot. for Summ. J., Ex. B at 11.
[14]  *Id.*

## III. Proceedings in the Court of Chancery

This matter commenced on November 22, 2022 when Gerlofs filed suit for release of the escrow funds against Citizens in the Court of Chancery (the "Chancery Litigation").[15] On December 23, 2022, Citizens answered Gerlofs's complaint.[16] Contemporaneously, Citizens filed its own counterclaim against Gerlofs and crossclaim against AdaptHealth, which sought only to interplead the Escrow Funds.[17] In doing so, Citizens was the first to serve AdaptHealth in this matter.[18] On December 30, 2022, Gerlofs served Citizens with interrogatories, requests for admission, and requests for production of documents.[19] On January 12, 2023, Gerlofs answered Citizens' counterclaim and lodged her own crossclaim against AdaptHealth.[20] Gerlofs then moved for summary judgment against Citizens on February 13, 2023.[21] AdaptHealth answered the crossclaims against it and filed a counterclaim against Gerlofs on March 6, 2023.[22]

Vice Chancellor Cook held a scheduling conference between the parties on February 24, 2023.[23] That conference centered on how to proceed on Gerlofs's

---

[15] Chancery Dkt. No. 1.
[16] Chancery Dkt. No. 4.
[17] *Id.*
[18] Chancery Dkt. No. 6.
[19] Chancery Dkt. No. 5.
[20] Chancery Dkt. No. 8.
[21] Chancery Dkt. No. 15.
[22] Chancery Dkt. Nos. 23, 24.
[23] *See* Chancery Dkt. No. 26 ("Feb. 24, 2023 Tr.").

motion for summary judgment, Citizens' request to interplead, and an ultimately withdrawn motion for default judgment[24] Gerlofs filed against AdaptHealth.[25] At that early stage in the Chancery Litigation, Citizens explained that this litigation was "purely an AdaptHealth and Gerlofs dispute, which is why [Citizens] moved to interplead the funds pursuant to the escrow agreement."[26] Citizens also argued that the dispute between AdaptHealth and Gerlofs should be resolved before Citizens responded to Gerlofs's motion for summary judgment because Citizens "take[s] no position on where the funds go."[27] Citizens said deferring Citizens' response to Gerlofs's motion would be "in the interest of all the parties, it would keep [Citizens'] costs down, which [Citizens has] tried to be as efficient as possible in responding to all the filings in this case over the past two to three months in an effort to do that."[28]

At the February 24 conference, Gerlofs signaled agreement with Citizens' interpleader motion, saying, "we don't have any objection to . . . Citizens interpleading the funds to the Court. As long as the funds end up with [Gerlofs], I don't think we care whether Citizens is holding them now or the Court is holding

---

[24] Apparently, AdaptHealth was confused by its designation as a nominal party, which led AdaptHealth to delay in responding to the other parties' pleadings. *Id.* at 13:2–19.
[25] *Id.* at 3:18–4:10.
[26] *Id.* at 9:4–7.
[27] *Id.* at 9:14–15.
[28] *Id.* at 9:17–21.

them now."[29]  Vice Chancellor Cook also indicated that interpleading the Escrow Funds would be proper, saying:

> as to the Citizens Bank issue on deposit with the Register in Chancery, I would strongly encourage the parties to talk about a procedure for that. I trust that, based on what's been said during the call, that maybe the parties can reach a resolution and provide a stipulated order that would address the concerns raised by Citizens Bank and that we can try to get some efficiencies here.[30]

Following the scheduling conference, Gerlofs submitted a proposed briefing schedule for her motion for summary judgment.[31]  Vice Chancellor Cook rejected the proposal, explaining that it was unduly condensed and did not account for the contemplated deposit of the Escrow Funds with the Register in Chancery.[32]  Shortly after, on March 21, 2023, Gerlofs withdrew her original motion for summary judgment against Citizens and replaced it with a motion for summary judgment against both Citizens and AdaptHealth.[33]

AdaptHealth opposed Gerlofs's motion for summary judgment on April 27, 2023.[34]  On May 4, 2023, Citizens submitted a letter to Vice Chancellor Cook explaining that the parties had negotiated interpleading the Escrow Funds up until the April 27 answering brief deadline, but Gerlofs ultimately rejected Citizens'

---

[29]  *Id.* at 15:19–23.
[30]  *Id.* at 22:14–21.
[31]  Chancery Dkt. No. 28.
[32]  Chancery Dkt. No. 29.
[33]  Chancery Dkt. Nos. 31, 32.
[34]  Chancery Dkt. No. 39.

proposed stipulation.[35] Citizens maintained that it took no position as to disbursement of the funds, except that Citizens would retain its reasonable attorneys' fees.[36] Vice Chancellor Cook scheduled a hearing on the summary judgment motion to take place on June 28, 2023.[37]

On June 6, 2023, after the attempts to obtain a stipulation failed, Citizens moved to interplead the Escrow Funds.[38] AdaptHealth did not oppose Citizens' motion,[39] but Gerlofs did.[40] Gerlofs's two objections to the interpleader motion were: (1) that Citizens' request for $34,000 in legal fees incurred to that point was unreasonable; and (2) that by releasing Citizens as a party, Gerlofs would be required to follow third-party discovery rules as to Citizens.[41] Gerlofs's opposition brief also evinces a dissatisfaction with Citizens' choice to take a neutral position in the dispute instead of siding with Gerlofs, which Gerlofs maintains would have "promptly and efficiently close[d] this matter."[42]

---

[35] Chancery Dkt. No. 42.
[36] *Id.*
[37] Chancery Dkt. No. 47.
[38] Chancery Dkt. No. 48 ("Citizens' Mot. to Interplead").
[39] Chancery Dkt. No. 52.
[40] Chancery Dkt. No. 51 ("Pl.'s Opp'n to Interpleader").
[41] *See id.* at 9.
[42] *Id.*

At the June 23, 2023 hearing, Vice Chancellor Cook addressed the motion to interplead.[43] Vice Chancellor Cook reiterated his support for interpleading the Escrow Funds, saying:

> We had a hearing some months ago. I thought I gave pretty clear guidance and encouragement that the parties allow Citizens Bank to interplead the funds. And I must say that I'm disappointed that we are where we are today, where that hasn't happened. And it seems to me as though, for whatever reason, this is being made needlessly complicated, and we've got a party here that I'm not sure needs to be here.[44]

Gerlofs nonetheless maintained her opposition to interpleader, raising the then-fledgling fee dispute and the potential for more convenient discovery if Citizens remained a party.[45] Gerlofs continued:

> Our beef here is not with AdaptHealth either, because, frankly, they don't have a claim to these funds, so . . . we don't need to sue AdaptHealth and start a lawsuit over a dispute on the funds, because they didn't assert claims. So what we need is a court order . . . declaring that there's no restrictions to turn over the funds.[46]

Vice Chancellor Cook took the matter under advisement at the conclusion of the hearing.[47]

On July 11, 2023, Vice Chancellor Cook requested the parties to submit a joint letter regarding the Court of Chancery's jurisdiction over the case in response to a

---

[43] *See* Chancery Dkt. No. 61 ("June 23, 2023 Tr.").
[44] *Id.* at 23:16–23.
[45] *Id.* at 24:14–23.
[46] *Id.* at 25:11–17.
[47] *Id.* at 72:6–7.

11

June 20, 2023 holding[48] in another Court of Chancery matter.[49]  At a September 18, 2023 hearing on the subject matter jurisdiction question, Vice Chancellor Cook opined that the Court of Chancery lacked subject matter jurisdiction because a declaratory judgment was an adequate legal remedy.[50]  The Chancery Litigation was subsequently transferred to this Court.[51]

## IV.    Proceedings in the Superior Court

Having been teed up in the Court of Chancery, the substantive litigation in Superior Court was relatively short-lived.  The parties' submissions in this Court were generally confined to letters describing the posture of the case with attachments containing the filings from the Chancery Litigation.  On November 3, 2023, the Court heard argument on Gerlofs's motion for summary judgment and Citizens' motion to interplead.[52]  The Court granted Gerlofs's motion, finding that AdaptHealth's failure to submit a claim to Citizens before the Termination Date precluded any genuine dispute as to whether the Escrow Funds should be disbursed to Gerlofs.[53]  The Court asked the parties to brief the issue of Citizens' costs.[54]

---

[48] *See ISS Facility Servs., Inc. v. JanCo FS 2, LLC*, 2023 WL 4096014 (Del. Ch. June 20, 2023).
[49] Chancery Dkt. No. 60.
[50] Chancery Dkt. No. 69 ("Sept. 18, 2023 Tr.") at 12:7–17:16.
[51] Chancery Dkt. No. 68.
[52] D.I. No. 14 ("Nov. 3, 2023 Tr.").
[53] *Id.* at 55:7–59:20.
[54] *Id.* at 59:21–60:12.

Citizens began on December 4, 2023 by filing its application for costs—particularly the fees generated by Citizens' counsel, DLA Piper LLC (US) ("DLA Piper").[55] AdaptHealth filed a response on December 18, 2023, which did not oppose Citizens' fees but said Gerlofs should pay the bulk of them.[56] Gerlofs also responded to Citizens' application on December 18, 2023, challenging Citizens' entitlement to fees and saying AdaptHealth should be fully responsible for any fees that were awarded.[57] Citizens replied to the Escrow Parties on January 3, 2024.[58] The same day, Gerlofs and AdaptHealth responded to each other's responses to Citizens.[59] On January 17, 2024, Gerlofs and AdaptHealth each replied to the other's January 3 brief.[60] The Court heard argument on Citizens' fee application on February 21, 2024.[61] On March 7, 2024, the parties informed the Court that they had failed to "agree on a procedure for mediating the fee dispute," and therefore a decision would be necessary.[62]

---

[55] D.I. No. 19 ("Citizens' Mot. for Costs").

[56] D.I. No. 21 ("AdaptHealth's Resp. to Citizens' Mot. for Costs").

[57] D.I. No. 22 ("Pl.'s Opp'n to Citizens' Mot. for Costs").

[58] D.I. No. 24 ("Citizens' Reply").

[59] D.I. No. 26 ("AdaptHealth's Opp'n to Pl.'s Br."); D.I. No. 27 ("Gerlofs's Opp'n to AdaptHealth's Br.").

[60] D.I. No. 30 ("Gerlofs's Reply Br."); D.I. No. 31 ("AdaptHealth's Reply Br.").

[61] D.I. No. 36.

[62] D.I. No. 37. After the February 21, 2024 hearing, the Court reached out to the parties to inquire as to whether the parties wished to mediate the fee dispute along with their other outstanding disputes.

**STANDARD OF REVIEW**

The Court "has broad discretion in determining the amount of fees and expenses to award."[63] The Court is guided by a non-exhaustive list of factors in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct.[64] This inquiry does not require a line-by-line assessment of the requested fees.[65] The Court avoids relying on hindsight to scrutinize an attorney's judgment about whether work was appropriate.[66] "The party seeking an award of fees and expenses bears the burden of establishing the amount sought is reasonable."[67]

**ANALYSIS**

As a starting point, the Court notes that Citizens' entitlement to fees is not limited to what is available at common law. Rather, the Escrow Agreement

---

[63] *Seidman v. Blue Foundry Bancorp*, 2023 WL 4503948, at *8 (Del. Ch. July 7, 2023) (quoting *Black v. Staffieri*, 2014 WL 814122, at *4 (Del. Feb. 27, 2014) (TABLE)).

[64] *Id.* (citing *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245–46 (Del. 2007); *McGlothlin v. Petrunich Oral and Maxillofacial Surgery*, 2023 WL 5747520, at *6 (Del. Super. Sept. 6, 2023). The factors set forth in Rule 1.5(a) are: (1) "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;" (2) "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;" (3) "the fee customarily charged in the locality for similar legal services;" (4) "the amount involved and the results obtained;" (5) " the time limitations imposed by the client or by the circumstances;" (6) " the nature and length of the professional relationship with the client;" (7) "the experience, reputation, and ability of the lawyer or lawyers performing the services;" and (8) "whether the fee is fixed or contingent." Del. Lawyers' R. Prof'l Conduct 1.5(a).

[65] *Seidman*, 2023 WL 4503948, at *8 (citations omitted).

[66] *Id.* (citations omitted).

[67] *Roma Landmark Theaters, LLC v. Cohen Exhibition Co. LLC*, 2021 WL 5174088, at *3 (Del Ch. Nov. 8, 2021) (citing *Glob. Link Logistics, Inc. v. Olympus Growth Fund III, L.P.*, 2010 WL 692752, at *1 (Del. Ch. Feb. 24, 2010)).

explicitly commands that AdaptHealth and Gerlofs must indemnify Citizens for any expenses incurred in connection with Citizens' role as Escrow Agent.[68] The Escrow Agreement places only two limitations on Citizens' indemnity rights. The first limitation is that Citizens cannot be indemnified for costs incurred "as a result of [Citizens'] bad faith, willful misconduct or gross negligence."[69] The second limitation restricts attorneys' fees to those that are "reasonable."[70] The Escrow Agreement also instructs that Gerlofs and AdaptHealth "shall bear [Citizens' costs] in proportion to their respective responsibility."[71] The Court will address each of these components of Section 9 of the Escrow Agreement in turn.

## I. Citizens' Good Faith

Gerlofs is alone in challenging Citizens' conduct in this matter.[72] Gerlofs's critiques of Citizens' conduct revolve around three main points. First, Gerlofs argues that Citizens should have acquiesced to Gerlofs's demand for disbursement of the Escrow Funds since Gerlofs's claim was meritorious.[73] Relatedly, Gerlofs says Citizens was wrong to not admit central allegations in Gerlofs's complaint.[74] Third, Gerlofs argues Citizens and DLA Piper were unjustified in not providing a

---

[68] Escrow Agreement § 9.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *See* AdaptHealth's Resp. to Citizens' Mot. for Costs at 1.
[73] Pl.'s Opp'n to Citizens' Mot. for Costs at 8–10.
[74] *Id.* at 9–10.

sum certain of their requested fees after the grant of summary judgment, which Gerlofs contends mandated additional briefing. In the Court's view, none of Gerlofs's arguments (or Citizens' actions) even approaches bad faith.

Gerlofs's argument that "the Complaint required no action on the part of Citizens" strains credulity.[75] Gerlofs—and only Gerlofs—decided to bring suit against Citizens while leaving AdaptHealth as only a nominal party.[76] By Gerlofs's account, she should have been permitted to file suit against an uninterested party, not serve the only other interested party, and then obtain an unopposed judgment. No matter how strong Gerlofs's substantive position may have been, that is not how disputes are resolved in an adversarial process.

Citizens' response to the complaint was appropriate and, from the start, an effort to minimize its expenses. Citizens' counterclaim against Gerlofs and crossclaim against AdaptHealth sought only to interplead the funds so that Citizens could avoid any costs or liability in this litigation.[77] As Citizens explained in that early pleading, Citizens feared it might incur multiple liability if it disbursed the Escrow Funds without joint instructions or a court order.[78] Gerlofs, through the Escrow Agreement, expressly authorized Citizens to interplead the funds in this

---

[75] *Id.* at 12–13.
[76] Although named as a "Nominal Party" in the caption, Gerlofs never served AdaptHealth.
[77] Chancery Dkt. No. 4 at 19–22.
[78] *Id.* at 20.

16

exact situation.[79] Citizens cannot be faulted for responding to a suit filed against it and following the terms of the Escrow Agreement.

Gerlofs's argument that Citizens wrongly withheld admissions in its answer to Gerlofs's complaint is similarly unpersuasive. Gerlofs points to four paragraphs of her complaint that she says Citizens should have admitted. Two of them are patently legal conclusions that did not require a response.[80] The two factual averments provide: "[n]o Claims were made by AdaptHealth prior to the Termination Date"[81] and "[n]o Claims were made or filed by the Termination Date."[82] To each of those, Citizens replied: "Citizens is without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph."[83] When Gerlofs later served requests for admissions as part of the

---

[79] Escrow Agreement § 8(f) ("The Escrow Parties authorize the Escrow Agent, if the Escrow Agent is. . . sued, to interplead all interested parties in any court of competent jurisdiction and to deposit any particular Escrow Funds with the clerk of that court."); *see also id* § 8(e):

> In the event that the Escrow Agent shall . . . receive any . . . instruction . . . with respect to the Escrow Funds which, in the Escrow Agent's reasonable and good faith opinion, is in conflict with any of the provisions of this Agreement . . . the Escrow Agent shall be entitled, without liability to any person, to refrain from taking any action other than to keep safely the Escrow Funds until the Escrow Agent shall be directed otherwise in accordance with Joint Instructions or an order of a court with jurisdiction over the Escrow Agent.

[80] *See* Chancery Dkt. No. 1 ¶ 31 ("No condition exists which prevents distribution of the Escrow Funds to [Gerlofs]."); *id.* ¶ 32 ("[Gerlofs] is entitled to the Escrow Funds.").
[81] *Id.* ¶ 16.
[82] *Id.* ¶ 30.
[83] Chancery Dkt. No. 4 at 6, 11.

17

discovery process, Citizens admitted that "[AdaptHealth] delivered no Claims to [Citizens] prior to the Termination date."[84]

Though Citizens' admission might seem to conflict with its earlier statements that it lacked requisite knowledge, the Court has no basis to question Citizens' compliance with Superior Court Civil Rule 11. Gerlofs's argument in this regard overlooks the subtle but important distinction between what Gerlofs averred in her complaint and what she asked in discovery.

Gerlofs's complaint simply stated that AdaptHealth made no "Claims" before the Termination Date. Section 6(b) of the Escrow Agreement defines "Claims" as "claims against the Escrow Funds *in accordance with Article 7 of the Purchase Agreement*."[85] Thus, determining whether the allegations set out in paragraphs 16 and 30 of Gerlofs's complaint were true would require an interpretation of Article 7 of Gerlofs and AdaptHealth's purchase agreement. But Section 8(a) of the Escrow Agreement expressly provides, "[t]he Escrow Agent shall not be . . . deemed to have knowledge of, or have any obligation to make inquiry into or consider, any term or provision of any agreement between any of the Escrow Parties . . . including without limitation any documents referenced in this Agreement."[86] Paragraphs 16 and 30 of the complaint could also encompass claims AdaptHealth made directly to Gerlofs

---

[84] Pl.'s Mot. for Summ. J., Ex. B at 11.
[85] Escrow Agreement § 6(b) (emphasis added).
[86] *Id.* § 8(a).

18

that Citizens would not know about. Accordingly, it was reasonable for Citizens to plead ignorance as to that broad allegation.

Unlike the complaint's general averment that AdaptHealth did not make any timely claims, the request for admission was much more targeted. The request for admission asked whether AdaptHealth "*delivered . . . Claims to* [*Citizens*] prior to the Termination Date."[87] This request was specifically about claims that were delivered to Citizens and thus necessarily within Citizens' knowledge; therefore, Citizens was much better positioned to respond to affirmatively. Citizens' different responses to different questions reflects an appropriate conscientiousness and hardly demonstrates bad faith.[88]

Last, Gerlofs's contention that Citizens—or, more aptly, DLA Piper— inappropriately refused to disclose the full amount of the accrued attorneys' fees requires little discussion. In the interim between the Court granting summary judgment and Citizens filing its fee application, the parties discussed stipulating to the reasonableness of Citizens' costs to avoid briefing on this issue.[89] That effort failed, though, because Gerlofs demanded to cap DLA Piper's fees at a fixed sum, accusing DLA Piper of "intend[ing] to give [itself] a blank check by agreement."[90]

---

[87] Pl.'s Mot. for Summ. J., Ex. B at 11 (emphasis added).

[88] The Court also notes that Citizens answered the complaint on December 23, 2022 and responded to Gerlofs's requests for admissions on January 27, 2023. That month-long delay does not appear to have had a major effect on the trajectory of this litigation.

[89] Citizens' Mot. for Costs, Ex. C.

[90] *Id.*

But since DLA Piper was continuing to work—and bill—on this matter, there would be no final sum until Citizens was released.[91]  DLA Piper did, however, provide an estimate its expected final fees,[92] which undercuts the notion that DLA Piper wanted to continue billing "without limitation or oversight."[93]  The Court declines to hold that Citizens acted in bad faith by refusing to forfeit a portion of its contracted-for indemnity rights to appease another party.

The Court finds no bad faith on behalf of Citizens at any point in this litigation, whether in this Court or the Court of Chancery.  Citizens is therefore entitled to be indemnified for its costs pursuant to Section 9 of the Escrow Agreement.  The Court will now turn its attention to the determination of the reasonableness of Citizens' fees and the parties' respective obligations for paying those fees pursuant to the Escrow Agreement.

## II.  Reasonableness of DLA Piper's Fees

The next question is whether the fees generated by DLA Piper are reasonable. There are two components of this inquiry: (1) whether the number of hours is reasonable; and (2) whether the hourly rate is reasonable.[94]  As noted, the Court has

---

[91] Section 9 of the Escrow Agreement broadly entitles Citizens to indemnification for all of its reasonable attorneys' fees, with no exception for so-called "fees on fees."  *See* Escrow Agreement § 9.

[92]  DLA Piper said it had accrued approximately $80,000 to that point and that a stipulation would keep its final fees below $90,000.  Citizens' Mot. for Costs, Ex. C.

[93]  Pl.'s Opp'n to Citizens' Mot. for Costs at 13.

[94]  *See McGlothlin*, 2023 WL 5747520, at *6.

substantial discretion on these issues because "[d]etermining a reasonable fee is necessarily an imprecise exercise."[95]

## A. The Number of Hours

The Court is satisfied that the number of hours DLA Piper has billed in this matter is reasonable. As before, Gerlofs is the only party to contest this point.[96] The Court will not repeat the entire history of this litigation, but there is a consistent theme of Citizens attempting to mitigate its costs only to be opposed by Gerlofs. This first occurred in November 2022 when Gerlofs filed suit primarily against Citizens instead of AdaptHealth after Citizens took no role in the dispute. It occurred again in December 2022 when Citizens first sought to interplead the Escrow Funds, which Gerlofs opposed. It occurred again in February 2023 when Citizens sought to avoid briefing Gerlofs's motion for summary judgment, which Gerlofs opposed. It occurred again in April 2023 when Citizens tried to obtain a stipulation regarding interpleader per Vice Chancellor Cook's advice, which Gerlofs opposed. It occurred again in June 2023 when Citizens formally moved to interplead the funds, which Gerlofs opposed. And it occurred most recently in November 2023 when Citizens tried to obtain a stipulation as to its fees, which Gerlofs opposed.

---

[95] *Id.* at *7; *see also Seidman*, 2023 WL 4503948, at *8.
[96] *See* AdaptHealth's Resp. to Citizens' Mot. for Costs at 1.

Gerlofs was entitled to take those positions as part of her litigation strategy. But choices have consequences. Gerlofs cannot spend a full year preventing Citizens from exiting the litigation—knowing that Citizens is contractually entitled to indemnification—and then complain that Citizens did not do enough to mitigate its costs.

Gerlofs's arguments as to specific time expenditures are unpersuasive. Gerlofs criticizes Citizens for billing for discovery that Citizens "forced upon itself" by not admitting the complaint's key allegations.[97] As explained above, however, there was nothing improper about Citizens' answer to the complaint. Gerlofs also challenges the time Citizens spent attempting to interplead the funds,[98] but such interpleader was specifically authorized by the parties' Escrow Agreement[99] and "strongly encourage[d]" by Vice Chancellor Cook.[100] Finally, Gerlofs contests the time Citizens spent researching the subject matter jurisdiction question because Citizens ultimately took no position on that issue.[101] The Court will not fault counsel for preparing to respond to a question specifically asked by a Vice Chancellor. Citizens was a party to this litigation and therefore its lawyers had an obligation to,

---

[97] Pl.'s Opp'n to Citizens' Mot. for Costs at 18.
[98] *Id.*
[99] Escrow Agreement § 8(f).
[100] Feb. 24, 2023 Tr. at 22:14–21.
[101] Pl.'s Opp'n to Citizens' Mot. for Costs at 18.

at the least, keep themselves informed of potentially case-dispositive developments.[102]

In all, Citizens was forced into an active role in this contentious litigation. The actions it took were reasonable, and it continuously attempted to end its involvement with this case. No reduction in Citizens' hours is necessary.

## B. The Hourly Rate

The Court is less persuaded with respect to the hourly rate billed by DLA Piper. More particularly, the Court is concerned with the unexplained fluctuation in DLA Piper's rates. In December 2022, the respective rates for partners and associates were $713.00 and $431.25.[103] In May 2023, the rates increased to $895.00 and $540.00.[104] In June 2023, the rate for partners increased again to $1,000.00.[105] In October 2023, the rate for partners decreased back to $895.00.[106]

Gerlofs highlighted this fluctuation in her opposition to Citizens' application.[107] Citizens did not offer any explanation of the rate changes in its reply brief. At oral argument, Citizens had no answer for why the rates went back down after being increased. Even after the Court provided Citizens an opportunity to look

---

[102] *See, e.g.*, Del. Lawyers' R. Prof'l Conduct 1.1, 1.3.
[103] Citizens' Mot. for Costs, Ex. D.
[104] *Id.*
[105] *Id.*
[106] *Id.*
[107] Pl.'s Opp'n to Citizens' Mot. for Costs at 17.

into the matter during the other parties' presentations at oral argument, Citizens still had no cogent explanation for the fluctuation.

The Court reiterates that Citizens bears the burden on its own application for costs.[108] Also, while not presumptively unreasonable, the fluctuation of DLA Piper's hourly rates, without explanation, adds heft to Citizens' burden to show their reasonableness. Despite that, Citizens' only argument on this point is "[n]ot only are Citizens' hourly rates reasonable, but Gerlofs has presented no evidence whatsoever that they are unusually high in the legal market."[109] This attempt to shift the burden is unavailing.[110]

Because the Court is unassured of the reasonableness of DLA Piper's increased rates in this matter, the Court will only award fees commensurate with the initial hourly rates: $713.00 for partners, $431.25 for associates. Accordingly, the total hours DLA Piper accrues in this matter shall be multiplied by those rates to determine the award of attorneys' fees to Citizens.

---

[108] *See Roma Landmark Theaters*, 2021 WL 5174088, at *3.

[109] Citizens' Reply Br. at 1

[110] Citizens quotes *All Pro Maids, Inc. v. Layton* as saying, "[d]efendants presented no evidence that the rate charged by Brockstedt for his services as APM's primary litigation counsel was unusually high in the Wilmington legal market. I therefore reject Defendants arguments that Brockstedt's rate was excessive and unreasonably high." 2004 WL 3029869, at *5 (Del. Ch. Dec. 20, 2004). That quote, though, does not contradict the precedent that an applicant bears the burden of establishing the reasonableness of its fees. In *All Pro Maids*, the defendants argued that a Wilmington-based attorney should be held to Sussex-based rates because the parties resided in Sussex. *Id.* The court only made the above-quoted comment after explaining that defendants' evidence of lesser rates in Sussex was inapposite. *Id.*

## III. Allocation of the Costs

The remaining question is how Citizens' costs should be allocated among AdaptHealth and Gerlofs. The Escrow Agreement provides some guidance, saying: "As between the Escrow Parties, each of them shall bear [Citizens' costs] in proportion to their respective responsibility, if any, with respect to the foregoing, or, if neither of them bears greater responsibility than the other, each Escrow Party shall bear one-half of the foregoing."[111] The Court must therefore evaluate the respective responsibility of AdaptHealth and Gerlofs for Citizens' fees.

### A. Pre-April 28, 2023 Costs

Citizens' costs in the early stages of this litigation can be fairly blamed on each of the Escrow Parties for different reasons. Gerlofs is perhaps most directly responsible because she chose to make Citizens integrally involved in this dispute. That was an inefficient choice. Nothing in the Escrow Agreement calls for Citizens to be a party to litigation regarding the Escrow Funds. To the contrary, Sections 8(e) and 8(f) of the Escrow Agreement explicitly contemplate Citizens *not* being a party to disputes over the Escrow Funds. Nor did Citizens ever breach the Escrow Agreement. Although Gerlofs contends Citizens should have simply ignored AdaptHealth's belated objection, Section 6(a) of the Escrow Agreement plainly states that Citizens "shall *only* disburse the Escrow Funds" pursuant to joint

---

[111] Escrow Agreement § 9.

instructions or a court order.[112]   Citizens would have breached the Escrow Agreement if it acceded to Gerlofs's demands.

The more efficient course for Gerlofs would have been to bring an action only against AdaptHealth and, once successful, deliver that judgment to Citizens. That is the route the plaintiff took in the analogous case Vice Chancellor Cook ordered briefing on,[113] and that path had been charted by similarly situated plaintiffs before Gerlofs.[114]  The Escrow Agreement itself contemplates an Escrow Party presenting Citizens with an order from an action in which Citizens was not a party.[115]  In sum, Citizens' costs were directly caused by Gerlofs unwarranted decision to file suit against Citizens instead of AdaptHealth.

Still, AdaptHealth's role in sparking this controversy cannot be ignored. As imperfect as Gerlofs's pursuit of her claims may have been, Gerlofs's efforts would not have been necessary if AdaptHealth had not objected wrongfully to disbursement of the Escrow Funds.[116]  AdaptHealth may not have directly initiated Citizens'

[112] *Id.* § 6(a) (emphasis added).

[113] *See ISS Facility Servs.*, 2023 WL 4096014, at *1-2.

[114] *See, e.g.*, *Elavon, Inc. v. Elec. Transaction. Sys. Corp.*, 2022 WL 667075, at *1-2 (Del. Ch. Mar. 7, 2022); *I/Mx Information Mgmt. Sols., Inc. v. MultiPlan, Inc.*, 2013 WL 3322293, at *1 (Del. Ch. June 28, 2013).

[115] Escrow Agreement § 6(a) ("The delivery to the Escrow Agent by an Escrow Party of a court order . . . shall constitute a representation to the Escrow Agent that such order . . . constitutes an Order hereunder and the Escrow Agent shall be entitled to rely thereon without any further duty of inquiry or investigation.").

[116] The Court makes no determination through this opinion as to the merit of any other claims outstanding in this litigation.

involvement in this dispute, but AdaptHealth's conduct was the source of the events that followed. Thus, AdaptHealth too has responsibility for Citizens' costs.

AdaptHealth and Gerlofs's actions were interdependent factors that only led to Citizens' costs in tandem. Without AdaptHealth's contractually unsupported decision to withhold consent to disbursement, there would have been no litigation over the Escrow Agreement. Without Gerlofs's contractually unsupported decision to force Citizens into this litigation over the Escrow Agreement, Citizens would have no litigation costs. Therefore, AdaptHealth and Gerlofs responsibility for Citizens' initial costs is in equipoise, so the Escrow Parties must evenly split those costs.

### B. Post-April 28, 2023 Costs

The analysis changes with respect to the costs Citizens incurred following Gerlofs's unilateral refusal to consent to Citizens interpleading the Escrow Funds. That refusal was cemented, at the latest, on April 28, 2023.[117] Importantly, AdaptHealth was willing to consent to interpleader, which would have ended Citizens' involvement in this matter.[118] The Court sees this as a turning point in the parties' respective responsibility for Citizens' costs. After April 28, 2023, the only reason Citizens was involved in this litigation—and incurring associated costs—was

---

[117] Chancery Dkt. No. 42.
[118] AdaptHealth's Resp. to Citizens' Mot. for Costs, Ex. B.

Gerlofs's refusal to let Citizens out.  It follows that Gerlofs is responsible for all the costs Citizens incurred from then on.

Gerlofs raises three arguments as to why she justifiably held out from the interpleader stipulation: (1) "[t]he procedure for interpleader would have forced Ms. Gerlofs to answer a new action for interpleader, and then assert cross claims against AdaptHealth;" (2) "the mechanism Citizens actually proposed required Ms. Gerlofs to bear sole responsibility for all of Citizens' fees;" and (3) "Citizens would no longer be a party, and Ms. Gerlofs would have to seek facts through third party discovery."[119]  None of these arguments is effective here.

Regarding the first and third reasons, they demonstrate that Gerlofs was not keeping Citizens in this case for substantive reasons.  Instead, Citizens' involvement was merely convenient for Gerlofs, and Gerlofs evidently chose to reduce her own litigation costs at the expense of Citizens.  Gerlofs was free to make that choice, but she is not free to make AdaptHealth pay for it.  Notably, those same procedural "efficiencies" applied equally to AdaptHealth, yet AdaptHealth still consented to interpleader.

The analysis is essentially the same with regard to Gerlofs's fear of having to pay Citizens' fees herself.  Though this is closer to a substantive dispute, it appears to the Court that Gerlofs could have simply tacked that relatively small fee dispute

---

[119]  Gerlofs's Opp'n to AdaptHealth's Br. at 5.

on to her main claims against AdaptHealth. Citizens' proposed order said only that Citizens' costs would be retained from the Escrow Funds—at a point when entitlement to the Escrow Funds was contested.[120] The proposed order did not reference who would ultimately be responsible for Citizens' costs. The Court does not agree with Gerlofs that consenting to interpleader would have involved consenting to pay all of Citizens' fees.

At bottom, Gerlofs made a series of strategic decisions in this litigation that, while permissible, were markedly inefficient with respect to Citizens. Gerlofs made those choices despite the broad indemnity rights Citizens enjoyed under the Escrow Agreement. As a result, Gerlofs is responsible for the majority of Citizens' costs in this litigation.

## CONCLUSION

In conclusion, Citizens' application for costs is GRANTED, but the hourly rates used to calculate the award of attorneys' fees shall be fixed at $713.00 for partners and $432.25 for associates. Any awarded costs Citizens incurred before April 28, 2023 shall be paid in equal shares by Gerlofs and AdaptHealth, with each party paying one-half of such costs. Any awarded costs Citizens incurred on or after April 28, 2023 shall be paid solely by Gerlofs.

---

[120] AdaptHealth's Resp. to Citizens' Mot. for Costs, Ex. A.

The parties shall meet and confer regarding how they wish to structure the respective payments of the awarded costs and disbursement of the Escrow Funds. The parties shall jointly submit a letter and proposed order to the Court no later than May 17, 2024 arranging those respective transfers.  For the avoidance of doubt, any costs incurred by Citizens up until the submission of the proposed order shall be included in the award, subject to the rate limitation noted above.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**